IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 17, 2018 Session

**STATE OF TENNESSEE v. STEPHEN BERLINE ORRICK**

**Appeal from the Circuit Court for Warren County**
**No. 15-CR-725     Larry B. Stanley, Jr., Judge**

**No. M2017-01856-CCA-R9-CD**

This interlocutory appeal concerns the Warren County Circuit Court's order granting the Defendant's motion to disqualify the Office of the District Attorney General for the Thirty-First Judicial District based upon an imputed conflict of interests of an assistant district attorney general. On appeal, the State contends that the trial court abused its discretion by granting the motion. We reverse the order of the trial court and remand the case for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission; Order of the Circuit Court
Reversed; Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and JOHN EVERETT WILLIAMS, P.J., joined.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price and James E. Gaylord, Assistant Attorneys General; Lisa S. Zavogiannis, District Attorney General; and Tom Miner, Assistant District Attorney General, for the appellant, State of Tennessee.

Billy K. Tollison, McMinnville, Tennessee, for the appellee, Stephen Berline Orrick.

**OPINION**

On October 2, 2015, the Defendant was indicted on four counts of rape of a child and four counts of aggravated sexual battery. Initially, the District Public Defender's Office represented the Defendant but was permitted to withdraw due to a conflict of interests involving the alleged victim's sibling. On November 10, 2015, Felicia Walkup was appointed to represent the Defendant. On December 2, 2015, Ms. Walkup filed a motion to reduce the Defendant's bond, and the trial court denied the motion on December 18, 2015. On January 6, 2016, Ms. Walkup sought permission to withdraw as

counsel because she had accepted a position as an Assistant District Attorney General for the Seventeenth Judicial District. Ms. Walkup was permitted to withdraw, and the Defendant's present counsel was appointed on January 13, 2016.

On April 5, 2017, the Defendant filed a motion to disqualify the Office of the District Attorney General for the Thirty-first Judicial District due to a conflict of interests. The defense alleged that Ms. Walkup was an Assistant District Attorney General for the Thirty-First Judicial District and argued that the district attorney general's office should be vicariously disqualified from prosecuting the Defendant because Ms. Walkup had been substantially involved in the Defendant's representation.

At the motion hearing, the defense relied upon Rule of Professional Conduct 1.10(d), the general rule regarding imputation of conflicts of interests, as the basis for disqualifying the district attorney general's office. The defense argued that Ms. Walkup was substantially involved in the Defendant's representation until she "left for public office," that her representation was related to a proceeding in which the State's and the Defendant's interests were adverse, and that the proceeding remained pending. The defense argued that Rule of Professional Conduct 1.11, the special rule regarding conflicts of interests for former and current government officers and employees, did not apply in this case because this Rule protected the government's confidential information, not the Defendant's confidential information.

The prosecutor conceded that Ms. Walkup could not participate in the prosecution based upon an actual conflict of interests. The prosecutor argued that Rule 1.11, pursuant to Comment [2], allowed for screening mechanisms to avoid imputation of conflicts of interests based upon an attorney's entering or leaving the public sector. The prosecutor stated that Comment [9] supported the proposition that Ms. Walkup's conflict of interests could not be imputed to other members of the district attorney general's office unless the other members had been tainted by Ms. Walkup's conflict. The prosecutor stated that as long as other assistant district attorneys general had not acquired relevant information from Ms. Walkup, those assistant district attorneys general were not prohibited from prosecuting this case.

The Defendant testified that he and Felicia Walkup had private, confidential conversations about the facts of this case and that he wrote her letters containing private information during her representation. On cross-examination, the Defendant stated that Ms. Walkup represented him from November 4, 2015, to January 11, 2016, and that the only court proceeding held during this time was related to a motion to reduce his bond.

Felicia Walkup testified that she obtained her license to practice law in 2001 and that she previously worked for the Coffee County District Attorney's Office before entering private practice in Warren County. She agreed with the Defendant's testimony relative to the dates of her representation and said that her only court appearance in this

case was the hearing on the motion to reduce his bond. She said that she began working for the District Attorney General for the Seventeenth Judicial District on January 11, that she worked there for six months, and that she transferred to the Office of the District Attorney General for the Thirty-First Judicial District, which included Warren County.

Ms. Walkup testified that when she began working for the Warren County District Attorney's Office, she spoke with District Attorney General Zavogiannis about conflicts of interests stemming from pending cases in which she had previously served as defense counsel. Ms. Walkup denied that they discussed the cases with specificity and noted that she did not know which of her previous cases had been resolved or remained pending. She said that based upon their discussion, she would have no involvement with her previous cases.

Ms. Walkup testified that the only discussion she had about the present case involved the prosecutor's asking whether she previously represented the Defendant and the prosecutor's telling her that the motion to disqualify had been filed. She said that she did not know where the State's file was maintained in the office, although she assumed it was in the prosecutor's office, and that she did not have access to it. She said that she did not receive any discovery materials during her representation of the Defendant. She denied participating in or overhearing conversations relative to the evidence against the Defendant and meeting any of the witnesses. She did not recall the name of the prosecuting law enforcement officer in this case and said that if she had spoken to the officer, their discussions would have been about other cases. On cross-examination, Ms. Walkup stated that she did not discuss any screening procedures relative to any particular case.

The trial court determined that Rule of Professional Conduct 1.11(a) addressed an attorney who had previously served as a public officer or employee but that Rule 1.11(a) did not address whom the former public officer presently served. The court stated that Rule 1.11(d) did not address the issue in the present case because it discussed obtaining governmental agency approval relative to conflicts of interests. The court noted that Comment [2] to Rule 1.11(b) permitted screening procedures and notice to avoid imputation of conflicts of interests for attorneys moving in and out of government employment in the same manner as permitted in Rule 1.10. The court noted, though, that the language of Rule 1.11(b) did not mention screening as a remedy for a conflict of interests. The court relied, at least in part, on *State v. Jason Clinard*, No. M2007-00406-CCA-R3-CD, 2008 WL 4170272, (Tenn. Crim. App. Sept 9, 2008), *no perm. app. filed*, in determining that Rule 1.10 applied in the present case because the *Jason Clinard* court analyzed a similar scenario pursuant to Rule 1.10. The trial court stated that the *Jason Clinard* court determined that "imputed disqualification" could not be avoided when the disqualified attorney was substantially involved in the representation of the former client. The trial judge then stated,

-3-

> The representation was in connection to an adjudicated proceeding that is directly adverse to the interest of the current client of the firm. True. And . . . the proceeding between the firm's current client and the lawyer's former client is still pending at the time the lawyer changes firms. True.
>
> So what I have is a rule that while it claims to – in Rule 1.11 – claims to deal with government employees who could use 1.10 to get out of a conflict by doing what you all have done[,] it doesn't specifically do that. And quite frankly, I have to take the rule over the comment and I have to take the Court of Appeals ruling over the comments as well.

The trial court determined that the State followed the procedure outlined in Rule 1.10(c), which allowed another attorney in the district attorney's office to represent the State. The court found that Ms. Walkup had no involvement in the case and had not spoken to the prosecutor about the facts of the case and that the State had instituted screening procedures to ensure that Ms. Walkup "will not do that." The court determined, though, that imputation of the conflict of interests upon the entire district attorney general's office could not be avoided pursuant to Rule 1.10(d), which required vicarious disqualification of the district attorney's office.

In its written order granting the motion to disqualify, the trial court found that Ms. Walkup was substantially involved in the Defendant's representation, that her previous representation was in connection with an adjudicative proceeding that was directly adverse to the interests of the district attorney's office, and that the case remained pending at the time Ms. Walkup began her employment with the district attorney's office. As a result, the court determined that Ms. Walkup's conflict of interests was imputed upon the district attorney's office. The court disagreed with the State's assertion that Rule 1.11(d) and Comment [2] were controlling authority and found that Rule 1.11(d) was inapplicable to this case, although the court recognized a "conflict" between the language of Rule 1.11(d) and Comment [2].

The State filed a motion requesting that the trial court reconsider its determinations and, alternatively, sought permission to seek an interlocutory appeal. The court denied the motion to reconsider but granted the request for permission to seek an interlocutory appeal in this court. *See* T.R.A.P. 9. This court granted the State's request for an interlocutory appeal. *See State v. Stephen Berline Orrick*, No. M2017-01856-CCA-R9-CD (Tenn. Crim. App. Nov. 8, 2017) (order).

On appeal, the State argues that offices of district attorneys general are not subject to a per se rule of disqualification based upon an imputed conflict of interests. In relying on *State v. Coulter*, 67 S.W.3d 3 (Tenn. Crim. App. 2001), *abrogated on other grounds by State v. Merriman*, 410 S.W.3d 779 (Tenn. 2013), the State argues that the trial court erred by applying Rule of Professional Conduct 1.10 and that Rule 1.11 applies

to assistant district attorneys general. The Defendant responds that the trial court did not abuse its discretion by applying Rule 1.10 and by disqualifying the Office of the District Attorney General for the Thirty-First Judicial District.

A trial court's decision to disqualify an attorney for a conflict of interests and to impute an attorney's conflict of interests upon the attorney's firm is reviewed for an abuse of discretion. *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *see State v. Culbreath*, 30 S.W.3d 309, 312-13 (Tenn. 2000). A court abuses its discretion by "apply[ing] an incorrect legal standard, or reach[ing] a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999); *see Clinard*, 46 S.W.3d at 182.

Our supreme court has "original and exclusive jurisdiction to promulgate" rules governing the professional and ethical conduct of attorneys. *Petition of Tenn. Bar Ass'n*, 539 S.W.2d 805, 807 (Tenn. 1976). Before the Rules of Professional Conduct became effective on March 1, 2003, the then-existing Code of Professional Responsibility addressed imputed conflicts of interests and vicarious disqualification. *See* Tenn. Sup. Ct. R. 8, Tenn. Code of Prof'l Resp. DR 5-105(D), EC 9-101 (replaced 2003); *see also In Re: Tenn. Rules of Prof'l Conduct*, No. M2000-02416-SC-RL-RL (Tenn. Sept. 17, 2002) (order). In *Clinard v. Blackwood*, a private attorney representing a client in a pending civil matter resigned from the attorney's firm to begin employment with a new private firm, which represented the attorney's client's adversary in the pending civil matter. 46 S.W.3d at 181-82. Although the parties did not dispute that the attorney was disqualified from representing a former client's adversary at the new firm, our supreme court determined that the then-disciplinary rules of the Code of Professional Responsibility presumed the attorney had shared the former client's confidences with the new firm, resulting in the vicarious disqualification of the new firm in the pending civil matter. *Id*. at 183; *see* Tenn. Sup. Ct. R. 8, Tenn. Code of Prof'l Resp. DR 5-105(D) (replaced 2003). The court determined that this presumption could be rebutted, though, by instituting adequate screening procedures at the new firm. *Clinard*, 46 S.W.3d at 184. The court determined that the new firm in *Clinard* instituted adequate screening procedures to rebut the presumption of shared confidences, but the court concluded, as an independent basis for disqualification, that the "appearance of impropriety" required vicarious disqualification of the new firm. *Id*. at 186; *see* Tenn. Sup. Ct. R. 8, Tenn. Code of Prof'l Resp. DR 9-6 (replaced 2003) ("Every lawyer owes a solemn duty . . . to avoid not only processional impropriety but also the appearance of impropriety.").

In applying *Clinard* in the context of a criminal defense attorney who resigned as counsel to accept employment with the district attorney's office, also before the adoption of the 2003 Rules of Professional Conduct, this court determined that an attorney's actual conflict of interests created the presumption that the attorney had shared the defendant's confidences with members of the district attorney's office but that the district attorney's office had instituted adequate screening procedures rebutting this

presumption. *Coulter*, 67 S.W.3d at 28-31. Relative to whether an appearance of impropriety independently required vicarious disqualification of the district attorney's office, the *Coulter* court noted that the supreme court's analysis in *Clinard* was in the context of a civil proceeding and involved a private attorney moving between private law firms. *Id*. at 31. The *Coulter* court explained that

> [p]rivate and public practice have significant distinctions, such that screening procedures for attorneys in government service are generally viewed with less skepticism: "The relationships among lawyers within a government agency are different from those among partners and associates of a law firm. The salaried government employee does not have the financial interest in the success of departmental representation that is inherent in private practice."

*Id*. at 32 (internal citations omitted); *see State v. Tate*, 925 S.W.2d 548, 556-57 (Tenn. Crim. App. 1995) (concluding that a prosecutor's actual conflict of interests and disqualification does not require vicarious disqualification of the "entire district attorney general's office . . . so long as the attorney at issue does not disclose confidences or otherwise participate in the prosecution"); *Mattress v. State*, 564 S.W.2d 678, 680 (Tenn. Crim. App. 1977) (determining that the trial court did not abuse its discretion by determining that an appearance of impropriety was not created by disqualifying the assistant district attorney with an actual conflict of interests but allowing another assistant attorney general to prosecute the case). The court determined that when a prosecutor has an actual conflict of interests creating an appearance of impropriety, "'[e]arly and adequate screening . . . should resolve [the] problem.'" *Coulter*, 67 S.W.3d at 32 (quoting *Tate*, 925 S.W.2d at 556); *see* Tenn. Bd. Prof. Resp., Formal Op. No. 87-F-111, 1987 WL 1446637, at *2 (Sept. 16, 1987) (stating that a "per se rule" of disqualification for a district attorney's office when an assistant district attorney general has a conflict of interests is inappropriate). The court reasoned that in the context of a defense attorney joining a district attorney's office, "*the appearance of impropriety is not the central concern*" but rather that a disclosure of confidential information would violate a criminal defendant's constitutional rights, including the privilege against self-incrimination, the effective assistance of counsel, a fair and impartial trial, and due process of law. *Coulter*, 67 S.W.3d at 32-33 (emphasis added).

Since *Clinard* and *Coulter*, the Rules of Professional Conduct were adopted by our supreme court, replacing the Code of Professional Responsibility provisions discussed in *Clinard* and *Coulter*. *See* Tenn. Sup. Ct. R. 8, RPC (2003) (amended 2011) ("The ethical standards relating to the practice of law and to the administration of law in the courts of this State shall be as hereinafter set out."). In this case, the parties do not dispute that Ms. Walkup had an actual conflict of interests, disqualifying her as a prosecutor in the Defendant's case. *See* Tenn. Sup. Ct. R. 8, RPC 1.9(a) (2017) (Duties to Former Clients). The issue before this court is whether Ms. Walkup's disqualification

should be vicariously imputed upon the district attorney general's office, which requires an examination of Rules of Professional Conduct 1.10 and 1.11.

Rule of Professional Conduct 1.10(c) states that

if a lawyer is personally disqualified from representing a person with interests adverse to a client of a law firm with which the lawyer was formerly associated, other lawyers currently associated in a firm with the personally disqualified lawyer may represent the person, . . . if both the personally disqualified lawyer and the lawyers who will represent the person on behalf of the firm act reasonably to:

(1) identify that the personally disqualified lawyer is prohibited from participating in the representation of the current client; and

(2) determine that no lawyer representing the current client has acquired any information from the personally disqualified lawyer that is material to the current matter and is protected by RPC 1.9(c);

(3) promptly implement screening procedures to effectively prevent the flow of information about the matter between the personally disqualified lawyer and the other lawyers in the firm; and

(4) advise the former client in writing of the circumstances that warranted the implementation of the screening procedures required by this Rule and of the actions that have been taken to comply with this Rule.

Tenn. Sup. Ct. Rule 8, RPC 1.10(c) (2017). However, these procedures cannot

avoid imputed disqualification of the firm, if: (1) the disqualified lawyer was substantially involved in the representation of a former client; and (2) the lawyer's representation of the former client was in connection with an adjudicative proceeding that is directly adverse to the interests of a current client of the firm; and (3) the proceedings between the firm's current client and the lawyer's former client is still pending at the time the lawyer changes firms.

Tenn. Sup. Ct. Rule 8, RPC 1.10(d)(1)-(3) (2017). "The disqualification of lawyers associated in a firm with former or current government lawyers is governed by RPC 1.11." Tenn. Sup. Ct. Rule 8, RPC 1.10(f) (2017).

Although Rule 1.10(d) does not specifically utilize the "appearance of impropriety" language from *Clinard*, the principles of the standard are contained in Rule 1.10(d) because "disqualification of a law firm [is required] when a lawyer [is] perceived as 'switching teams' in the course of pending litigation" regardless of adequate screening procedures. Tenn. Sup. Ct. Rule 8, RPC 1.10(d), Cmt. [9] (2017); *see* Tenn. Sup. Ct. Rule 8, RPC 1.10(d), Commentary [9] (2003) (stating paragraph (d) restates the rule of law established by *Clinard v. Blackwood*"). However, "[u]nder [Rule] 1.11(d), where a lawyer represents the government after having served clients in private practice . . . imputation is governed by [Rule] 1.11(c)(1)." Tenn. Sup. Ct. Rule 8, RPC 1.10(d), Cmt. [11] (2017); *see* Tenn. Sup. Ct. Rule 8, RPC 1.10(d), Commentary [10] (2003); *see also* Tenn. Sup. Ct. Rule 8, RPC 1.10(f) (2017).

On January 1, 2011, the amended Rules of Professional Conduct became effective. Tenn. Sup. Ct. Rule 8, RPC, Complier's Notes (2011). The 2011 amendment adopted subsection (f) to Rule 1.10, requiring the application of Rule 1.11 relative to the disqualification of attorneys associated in a firm with former or current government attorneys. However, even before the adoption of subsection (f), this court determined that Rule 1.10 addresses imputed conflicts of interests and vicarious disqualification when a private attorney "moves from one private law firm or corporate legal office to another." *State v. Frankie E. Casteel*, No. E2003-01563-CCA-R3-CD, 2004 WL 2138334, at *15 (Tenn. Crim. App. Sept. 24, 2004) (declining to analyze whether the disqualification of a district attorney's office was proper pursuant to Rule 1.10), *perm. app. denied* (Tenn. Dec. 28, 2004).

When the Rules of Professional Conduct were adopted in 2003, Rule 1.11(c)(1), Successive Government and Private Employment, stated the following:

> Except as law may otherwise expressly permit, a lawyer *serving as a public officer or employee shall not*:
>
> (1) *Participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment*, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter.
>
> . . . .

Tenn. Sup. Ct. Rule 8, RPC 1.11(c)(1) (2003) (emphasis added). Rule 1.11(c) "does not disqualify other lawyers in the agency with which the lawyer in question has become associated." *Id.*, Commentary [8] (2003). This court determined that the 2003 version of Rule 1.11(c) "governs situations arising when a lawyer leaves private practice to represent the government." *Frankie E. Casteel*, 2004 WL 2138334, at *16 (applying

Rule 1.11 in determining whether an assistant district attorney general's actual conflict of interests vicariously disqualified the district attorney general's office).

The amended version of Rule 1.11, Special Conflicts of Interest for Former and Current Government Officers and Employees, effective at the time the Defendant filed his motion to disqualify the district attorney's office states, in relevant part, that an attorney employed as a public officer or employee

shall not:

(i) *participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment*, unless the appropriate government agency gives its informed consent, confirmed in writing, or under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter[.]

Tenn. Sup. Ct. Rule 8, RPC 1.11(d)(2)(i) (2017) (emphasis added). Rule 1.10 "is not applicable to the conflicts of interest[s] addressed by [Rule 1.11]," but Rule 1.10(b) "permits screening and notice to avoid imputation for lawyers moving into . . . positions as government officers or employees in the same manner as set forth for other lawyers in [Rule] 1.10(c)." *Id*., Cmt. [2] (2017). Likewise, "[b]ecause of the problems raised by imputation within a government agency, paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers." *Id*. Rule 1.11 is designed, at least in part, "to protect the former client," preventing an attorney "who has pursued a claim on behalf of a private client [from] pursu[ing] the claim on behalf of the government[.]" *Id*., Cmt. [3] (2017). Rule 1.11(d) "does not disqualify other lawyers in the agency with which the lawyer in question has become associated." *Id*., Cmt. [9].

Our supreme court, pursuant to its inherent constitutional authority, "has original and exclusive jurisdiction to promulgate its own Rules," and this "authority embraces the . . . supervision of" the practice of law. *Petition of Tenn. Bar Ass'n*, 539 S.W.2d at 807; *see Clinard*, 46 S.W.3d at 182. Commentary and comments to the Rules are likewise adopted by our supreme court and are intended to "explain[] and illustrate[] the meaning and purpose of the Rule" and to be "guides to interpretation" in order to maintain compliance with the Rules. Tenn. Sup. Ct. Rule 8, Scope [15], [23] (2017). The interpretation of rules adopted by our supreme court is a question of law and is reviewed de novo. *Lockett v. Bd. of Prof'l Responsibility*, 380 S.W.3d 19, 25 (Tenn. 2012); *see Thomas v. Oldfield*, 279 S.W.3d 259, 261 (Tenn. 2009). "When interpreting the Rules of the Tennessee Supreme Court, [appellate courts] apply the traditional rules of statutory construction." *Lockett*, 380 S.W.3d at 25; *see Keough v. State*, 356 S.W.3d 366, 370-71 (Tenn. 2011) (applying the rules of statutory construction to interpret Tennessee Supreme

Court Rule 28 and Tennessee Rule of Evidence 611); *Thomas*, 279 S.W.3d at 261 (applying the rules of statutory construction to interpret the Tennessee Rules of Civil Procedure); *see Doe v. Board of Prof'l Responsibility*, 104 S.W.3d 465, 469 (Tenn. 2003) (applying the rules of statutory construction to interpret Tennessee Supreme Court Rule 9).

Appellate review of court rules attempts to "ascertain and give effect to the . . . intent without unduly restricting or expanding a [rule's] coverage beyond its intended scope." *Doe*, 104 S.W.3d at 469 (internal quotations and citations omitted). Intent is determined "from the natural and ordinary meaning of the . . . language within the context of the entire [rule] without any forced or subtle construction that would extend or limit the . . . meaning." *Id*. (internal quotations and citations omitted). "[A]ll sections are to be construed together in light of the general purpose and plan." *Id*. (internal quotation and citation omitted). "[T]he rules of . . . construction direct us not to apply a particular interpretation of a [rule] if that interpretation would yield an absurd result." *Id*. (internal quotation and citation omitted). Likewise, "[u]nder the generally accepted rules of . . . construction, a special [rule], or a special provision of a particular [rule], will prevail over a general provision in another [rule] or a general provision in the same [rule]." *Keough*, 356 S.W.3d at 371.

Rule 1.10 recites the general rule governing imputed conflicts of interests of an attorney upon a firm. Tenn. Sup. Ct. Rule 8, RPC 1.10 (2017). Rule 1.10(b) addresses the scenario in which an attorney at a current firm is prohibited from representing a client at the current firm whose interests are adverse to the attorney's former client at a former firm. However, subsection (c) permits other attorneys at the current firm to represent the current client if the attorney with the conflict of interests is disqualified from representing the current client, the other attorneys in the current firm have not obtained material information about the representation from the disqualified attorney, adequate screening procedures are implemented to prevent the flow of information between the disqualified attorney and the other attorneys in the current firm, and the disqualified attorney's former client is advised in writing of the circumstances requiring the screening procedures and of the procedures implemented. *See* Tenn. Sup. Ct. Rule 8, RPC 1.10(c)(1)-(4) (2017). However, the Rule states that vicarious disqualification is required, regardless of compliance with subsection (c), if the disqualified attorney was substantially involved in the representation of the former client, the representation of the former client was related to an adjudicative proceeding that is directly adverse to the current client's interests, and the proceeding is pending at the time the attorney changes firms. Tenn. Sup. Ct. Rule 8, RPC 1.10(d)(1)-(3) (2017).

The language of Rule 1.10(c)(1)-(4) is analogous to and incorporates the screening procedures discussed in *Clinard* that were implemented in an effort to prevent the disclosure of confidential client information and to prevent a current firm's disqualification from representing a current client. *See Clinard*, 46 S.W.3d at 184.

-10-

Although Rule 1.10 does not include the "appearance of impropriety" language from *Clinard*, which served as an independent basis for the vicarious disqualification of a firm pursuant to the Code of Professional Responsibility, subsection (d) "restates the rule of law established by *Clinard*," which "continues under the present Rules." Tenn. Sup. Ct. Rule 8, RPC 1.10(d), Cmt. [9]. *But c.f. Frankie E. Casteel*, 2004 WL 2138334, at *16 (stating that "[n]either Rule 1.10 or 1.11 adopts an appearance of impropriety standard"). Rule 1.10(d) creates a per se rule of disqualification, consistent with the appearance of impropriety standard in *Clinard*, to the extent that a current firm's adequate screening procedures will not prevent vicarious disqualification when the disqualified attorney's representation was substantial and was related to a pending adjudicative proceeding in which the interests of the former and current clients are directly adverse.

However, Rule 1.10(f) provides that "[t]he disqualification of lawyers associated in a firm with former or current government lawyers is governed by RPC 1.11." Tenn. Sup. Ct. Rule 8, RPC 1.10(f) (2017); *see* Tenn. Sup. Ct. Rule 8, RPC 1.10, Cmt. [11] ("[W]here a lawyer represents the government after having served clients in private practice . . . imputation is governed by RPC 1.11(c)(1)."). The amended version of Rule 1.10, effective January 1, 2011, adopted subsection (f), and the language mandates the application of Rule 1.11 when the disqualified attorney is a current or former government attorney, which includes assistant district attorneys general. Subsection (f) incorporates the determinations in *Coulter* that (1) *Clinard* applies in the context of civil proceedings in which an attorney moves between private law firms and (2) when a private attorney leaves criminal defense practice to join a district attorney general's office, the primary concern is not the appearance of impropriety, as in *Clinard*, but rather that the disclosure of confidential information could violate a criminal defendant's constitutional rights. *See Coulter*, 67 S.W.3d at 32-33.

After the adoption of the 2003 Rules of Professional Conduct but before the 2011 amendment adopting Rule 1.10(f), this court relied on *Coulter* for the proposition that vicarious disqualification based upon *Clinard* was not applicable to scenarios in which a criminal defense attorney becomes an assistant district attorney general. *See State v. Michelle Tipton*, No. E2004-01278-CCA-R3-CD, 2005 WL 2008178, at *5-6 (Tenn. Crim. App. Aug. 22, 2005) (stating, without reference to the Rules of Professional Conduct, that the "disqualification doctrine" in *Clinard* "does not apply identically when an attorney transfers to the district attorney general's office as it does when an attorney transfers to a private law firm" and determining that the district attorney general's screening procedures adequately rebutted the "central concern" regarding the disclosure of confidential information and its potential impact on a criminal defendant's constitutional rights), *perm. app. denied* (Tenn. Jan. 30, 2006); *Frankie E. Casteel*, 2004 WL 2138334, at *16 (stating, after discussing *Clinard* and *Coulter*, that Rule 1.10 governs vicarious disqualification when an attorney "moves from one private law firm or corporate legal office to another" and that Rule 1.11(c) applies when an attorney "leaves private practice to represent the government"); *see also State v. Davis*, 141 S.W.3d 600,

612-615 (Tenn. 2004) (applying principles expressed in *Coulter*, without reference to the Rules of Professional Conduct, to a motion to disqualify the district attorney general's office because the prosecutor had worked previously as a judicial law clerk to the trial court judge).

By contrast, Rule 1.11 recites the special rule regarding conflicts of interests for current and former government officers and employees. *See* Tenn. Sup. Ct. Rule 8, RPC 1.11 (2017). The majority of the Rule addresses scenarios not relevant to this appeal. *See* Tenn. Sup. Ct. Rule 8, RPC 1.11(a) (relevant to attorneys who are former public officers or government employees); 1.11(b) (relevant to screening procedures to avoid vicarious disqualification of a firm because an attorney employed by the firm is a former public officer or government employee subject to disqualification pursuant to subsection (a)); 1.11(c) (relevant to attorneys who are former government employees or public officers and the need to protect "confidential government information"). The provision containing language relevant to an attorney who leaves private practice for government service is subsection (d)(2)(i), which prohibits an attorney from "participat[ing] in a matter in which the lawyer participated personally and substantially while in private practice[.]" *See* Tenn. Sup. Ct. Rule 8, RPC 1.11(d)(2)(i).

Although the trial court determined, and the Defendant argues on appeal, that Rule 1.11(d)(2)(i) is not applicable in the present case because its focus is protecting the confidentiality of the government, subsection (d)(2) applies "regardless of whether a lawyer is adverse to a former client and [is] thus designed not only to protect the former client, but also to prevent a lawyer from exploiting public office[.]" Tenn. Sup. Ct. Rule 8, RPC 1.11(d)(2), Cmt. [3] (2017). The language of (d)(2)(i) shows that a government attorney is prohibited from participating in a matter in which the attorney personally and substantially participated before becoming a government attorney. Therefore, (d)(2)(i) prevents an attorney from representing a client in private practice in a matter involving the government and, before the matter is resolved, representing the government in the same matter. Rule 1.11(d)(1) reiterates that a public attorney remains bound by the rules governing not only conflicts of interests involving a current client, which includes the government entity for which the attorney works, but also conflicts of interests involving former clients, which includes clients the attorney represented before becoming a government attorney. *See* Tenn. Sup. Ct. Rule 8, RPC 1.11(d)(1), 1.7, 1.9 (2017).

Furthermore, the remaining language of Rule 1.11(d)(2)(i) provides three scenarios in which a government attorney might be permitted to participate in a matter in which the attorney participated personally and substantially before becoming a public attorney. However, these are inapplicable and irrelevant for purposes of this case because in a criminal case, the concern is preventing the disclosure of a defendant's confidential information to members of a district attorney general's office, and a public attorney remains bound by the rules related to duties to former clients. *See* Tenn. Sup. Ct. Rule 8, RPC 1.11(d)(1), 1.9 (2017). Rule 1.11 attempts to balance the interests

between a private client and the government, and an attorney "who . . . pursued a claim on behalf of a private client may not pursue the claim on behalf of the government, except [as] authorized" by subsection (d). Tenn. Sup. Ct. Rule 8, RPC, 1.11, Cmts. [3], [4] (2017). Although subsection (b) encompasses former government employees, it allows for screening and notice to avoid vicarious imputation of attorneys who "mov[e] into . . . positions as government officers or employees in the same manner as set forth by other lawyers in [Rule] 1.10(c)." Tenn. Sup. Ct. Rule 8, RPC 1.11, Cmt. [1] (2017). Therefore, adequate screening procedures protect a criminal defendant's confidential information. *See* Tenn. Sup. Ct. Rule 8, RPC 1.11(b), (c) (2017); *Coulter*, 67 S.W.3d at 32-33. Likewise, the language of Rule 1.11(d) "does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees[.]" Tenn. Sup. Ct. Rule 8, RPC 1.11, Cmts. [2], [9]. As a result, district attorneys general's offices are not subject to the *Clinard* per se disqualification rule based upon the appearance of impropriety.

The practical implications of applying the per se rule of disqualification in Rule 1.10(d) and *Clinard* highlight the need for a special rule regarding a public attorney's conflicts of interests and vicarious disqualification of the entities for which the attorney works. Application of the per se disqualification in these cases would create an "absurd result," significantly impacting efficiency of the administration of the criminal justice system. *See Doe*, 104 S.W.3d at 469. If vicarious disqualification of district attorneys general's offices were required each time a district attorney general employed a former criminal defense attorney, assuming the criterion of Rule 1.10(d)(1)-(3) are satisfied, the law enforcement function of prosecuting individuals accused of committing criminal offenses would become disrupted, routinely requiring the appointment of special prosecutors. Application of the per se rule of disqualification would also deter competent attorneys from entering public service as assistant district attorneys general, impeding a district attorney general's ability to hire competent attorneys while simultaneously complying with ethical standards. *See* Tenn. Sup. Ct. Rule 8, RPC 1.11, Cmt. [4] (2017). The provisions related to screening "are necessary to prevent the disqualification rule from imposing too severe a deterrent against entering public service." *See* Tenn. Sup. Ct. Rule 8, RPC 1.11, Cmt. [4]. Likewise, application of the per se disqualification rule fails to consider the primary concern in criminal cases of preventing the disclosure of a defendant's confidential information for the protection of constitutional rights. *See Coulter*, 67 S.W.3d at 32. Rule 1.10 is a general rule regarding the vicarious imputation of conflicts of interests, whereas Rule 1.11 is the specialized rule regarding the conflicts of interests of former and current government attorneys, and the principles of construction require the specialized rule to prevail over the general rule. *See Keough*, 356 S.W.3d at 371.

Based upon the foregoing, we conclude that Rule of Professional Conduct 1.11 is the applicable ethical authority when considering whether the conflict of interests of a disqualified assistant district attorney general should be vicariously imputed upon a

district attorney general's office. In making this determination, we have not overlooked the trial court's and the defense's reliance on *Jason Clinard*, in which a panel of this court cited Rule 1.10 in determining that vicarious imputation of a prosecutor's actual conflict of interests upon the district attorney's office was not required. 2008 WL 4170272, at *4-5.

In *Jason Clinard*, the defense sought disqualification of the district attorney general's office on the basis that an appearance of impropriety was created when an assistant public defender, who did not represent the defendant personally, obtained employment with the district attorney general's office and the defendant was represented by the public defender's office. *Id.* This court determined that the district attorney general's office instituted adequate screening procedures of the disqualified attorney pursuant to Rule 1.10(c) and that the defendant failed to show vicarious disqualification could not "be avoided by the implementation of screening procedures." *Id.* at *5. *Jason Clinard* predates the 2011 amendment to the Rules of Professional Conduct that adopted subsection (f) to Rule 1.10, requiring the application of Rule 1.11 in cases involving the disqualification of attorneys associated in a firm with former or current government attorneys. In any event, this court's reliance on whether the State complied with the procedures outlined in Rule 1.10(c) to avoid vicarious disqualification of the district attorney general's office was based upon *State v. Davis*, in which our supreme court considered the principles expressed in *Coulter*, distinguishing *Davis* from *Clinard v. Blackwood*, without reference to the 2003 Rules of Professional Conduct. *See Davis*, 141 S.W.3d at 612-615.

In *Davis*, the supreme court applied the principles of *Coulter* to the scenario in which a judicial law clerk to the trial court judge obtained employment with the district attorney general's office. *Id.* at 614. The supreme court noted that the disqualified attorney's involvement as a judicial law clerk was de minimus and that the attorney did not participate in the prosecution, did not discuss or share information about the case with any assistant district attorney general, did not have access to the prosecution's case file, and understood that he would have no involvement in the prosecution. *Id.* The court determined that the attorney was effectively screened from the prosecution and that, as a result, the trial court did not abuse its discretion by denying the motion to disqualify. *Id.* at 615.

As a result, this court's analysis in *Jason Clinard* was indirectly based upon the central concern in *Coulter*, which we have concluded is analogous to Rule 1.11, that when a prosecutor has an actual conflict of interests, adequate screening procedures will prevent the disclosure of a defendant's confidential information. *See Jason Clinard*, 2008 WL 4170272, at *4-5. Furthermore, the same screening and notice procedures provided in Rule 1.10(c) are permitted in Rule 1.11 to prevent the vicarious disqualification of a firm in which a disqualified public attorney is employed, and this court's reliance on the procedures stated in Rule 1.10(c) was not improper. *See* Tenn.

-14-

Sup. Ct. Rule 8, RPC 1.11(b), Cmt. [2]. Therefore, *Jason Clinard* implicitly rejected the per se disqualification rule in *Clinard v. Blackwood* and Rule 1.10(d). *See Jason Clinard*, 2008 WL 4170272, at *4-5; *Coulter*, 67 S.W.3d at 32. We note that in *State v. Perry Lewis Sisco*, No. M2017-01202-CCA-R3-CD, 2018 WL 1019870, at *8-10 (Tenn. Crim. App. Feb. 21, 2018), *perm. app. denied* (Tenn. May 17, 2018), this court relied significantly upon *Jason Clinard* and its reference to Rule 1.10 in determining that a district attorney general's screening procedures were adequate to prevent vicarious disqualification and that the defendant failed to establish the criterion of Rule 1.10(d), requiring vicarious disqualification regardless of adequate screening procedures. However, the court in *Perry Lewis Sisco* did not acknowledge the adoption of subsection (f) to Rule 1.10 required application of Rule 1.11. *See id*.

In *Klein Adlei Rawlins v. State*, No. M2010-02105-CCA-R3-PC, 2012 WL 4470650, at *12-14 (Tenn. Crim. App. Sept. 27, 2012), *perm. app. denied* (Tenn. Feb. 25, 2013), this court again considered the standard for determining whether a district attorney general's office should be disqualified from a prosecution when an assistant district attorney is disqualified based upon a conflict of interests. This court, without reference to the Rules of Professional Conduct, determined, pursuant to *Coulter*, that the district attorney general's screening mechanisms were sufficient to prevent the disclosure of the defendant's confidential information and that vicarious disqualification was not required. *Id.*, at *13-14. Likewise, in *State v. Thomas Paul Odum*, No. E2017-00062-CCA-R3-CD, 2017 WL 5565629, at *6-8 (Tenn. Crim. App. Nov. 20, 2017), *perm. app. denied* (Tenn. Feb. 15, 2018), this court determined, without reference to the Rules of Professional Conduct, that the per se disqualification rule based upon the appearance of impropriety expressed in *Clinard* was "more applicable to civil cases" and private attorneys than to criminal cases involving prosecutors. *Id*. at *8 (citing *Davis*, 141 S.W.3d at 613; *Coulter*, 67 S.W.3d at 32). The *Thomas Paul Odum* court determined that the district attorney general's office instituted adequate screening procedures preventing the disclosure of the defendant's confidential information to the prosecuting attorneys and that disqualification of the district attorney general's office was not warranted. *Id.* As a result, *Klein Adlei Rawlins* and *Thomas Paul Odum* reflect the view consistent with Rule 1.11 that it is inappropriate to apply a per se disqualification rule, based upon the appearance of impropriety, to a district attorney general's office when an assistant district attorney general has a disqualifying conflict of interests.

We conclude that Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.10 is the general rule governing the imputation of conflicts of interests but that Rule 1.11, the specialized rule regarding public service attorneys, applies to whether a disqualified prosecutor's conflict of interests should be imputed upon a district attorney general's office. The record reflects that the trial court rejected Rule 1.11 as the applicable authority and that the court determined vicarious disqualification was required pursuant to Rule 1.10(d), although it also determined that the State had complied adequately with the screening procedures provided in Rule 1.10(c).

The parties do not dispute that Ms. Walkup has an actual conflict of interests disqualifying her from participating in the Defendant's prosecution. *See* Tenn. Sup. Ct. Rule 8, RPC 1.11(d)(2)(i), 1.9(a) (2017). She testified at the motion hearing that she represented the Defendant between November 4, 2015, and January 11, 2016, that she prepared and filed a motion to reduce the Defendant's bond, and that her only court appearance in this case was related to the bond motion. She stated that she and the District Attorney General discussed her conflicts of interests stemming from pending cases in which she previously served as defense counsel. They did not discuss the cases with specificity, and Ms. Walkup understood after the discussion that she would not have any involvement in any of her previous cases. Ms. Walkup did not know which of her previous cases remained pending.

Ms. Walkup's only discussion about this case with the prosecutor related to the prosecutor's asking if she previously represented the Defendant and the prosecutor's telling her that the motion to disqualify had been filed by the defense. She did not know where the prosecution's file was maintained in the district attorney's office, and she did not have access to the case file. She did not receive discovery material during her representation of the Defendant and did not recall the name of the prosecuting law enforcement officer. She said that if she had spoken to the officer, their discussions would have been about other cases. She denied participating in and overhearing conversations with colleagues relative to the State's evidence against the Defendant.

The State submitted the prosecutor's affidavit, which stated that the District Attorney General reminded office personnel that Ms. Walkup had previously represented criminal defendants who might have pending cases and that those cases were not to be discussed with Ms. Walkup. The prosecutor stated that he and Ms. Walkup had never discussed the factual or legal merits of the Defendant's case, although the prosecutor spoke to Ms. Walkup to determine the extent of her representation in this case after he received the motion to disqualify.

The prosecutor stated that given the sensitive nature of sexual crimes, his files were maintained in his office filing cabinets, except when his administrative assistant needed temporary access. The prosecutor stated that his assistant was aware of the sensitive nature of the evidence contained in the files and that the assistant did not make the files available to other office personnel. The prosecutor stated that he and Ms. Walkup did not share an assistant and that he locked his office when he left each day. The prosecutor stated that Ms. Walkup did not prosecute offenses involving child abuse and that, as a result, did not interact with those who investigated the Defendant's case. The prosecutor stated that any meetings held relative to the Defendant's case would have been held in a conference room located on a different floor from Ms. Walkup's office.

-16-

The prosecutor stated that when he learned Ms. Walkup had previously represented the Defendant, the prosecutor sent a March 23, 2017 letter to the Defendant's attorney, the victim's mother, and the trial court notifying them of Ms. Walkup's conflict of interests and disqualification from the Defendant's case. The prosecutor stated that the victim's mother had no objection to the District Attorney's Office continuing to prosecute this case.

The record reflects that Ms. Walkup was prohibited from participating in the prosecution of the Defendant and that she did not provide anyone working in the district attorney's office with information related to the Defendant's case. Ms. Walkup and the prosecutor did not communicate about this case, and any meetings about this case were held on a different floor from Ms. Walkup's office. The District Attorney General and Ms. Walkup discussed generally her conflicts of interests related to cases in which she previously served as defense counsel, and they decided she would have no involvement with those cases. The prosecutor's affidavit reflects that the District Attorney General instructed personnel not to communicate with Ms. Walkup about any pending case in which Ms. Walkup had served as defense counsel. The record does not reflect any improper communications occurred relative to the Defendant's case. Likewise, the Defendant's attorney and the victim's mother were notified in writing of Ms. Walkup's conflict of interests. Therefore, the record supports the trial court's determinations that Ms. Walkup had not participated in the prosecution, that she had not spoken to the prosecutor about the facts of the case, that Ms. Walkup had not disclosed the Defendant's confidential information, and that adequate screening procedures had been instituted preventing the disclosure of confidential information. *See* Tenn. Sup. Ct. Rule 8, RPC 1.11(b)(1)-(4) (2017) (permitting screening and notice to avoid imputation for attorneys moving into government service in the same manner as provided for "other" attorneys in RPC 1.10(c)); *see id*. 1.10(c)(1)-(4). As a result, the adequate screening procedures prevented the disclosure of the Defendant's confidential information, which is the primary concern in criminal cases. *See Coulter*, 67 S.W.3d at 32-33. Therefore, Ms. Walkup's disqualifying conflict of interests did not warrant vicarious disqualification of the District Attorney General's Office.

In consideration of the foregoing and the record as a whole, we conclude that the trial court abused its discretion by granting the motion to disqualify the Office of the District Attorney General for the Thirty-First Judicial District. The order of the trial court is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

_____
ROBERT H. MONTGOMERY, JR., JUDGE